UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
Michael HILTON,

      Plaintiff,

    -v-

William BROWN, Superintendent,
Eastern Correctional Facility,

      Defendant.
-----------------------------------x

**REPORT AND**
**RECOMMENDATION**

: 07 Civ. 8611 (GBD)(MHD)

**TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

    Petitioner Michael Hilton seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, after his conviction in New York State Supreme Court, New York County, on one count of robbery in the third degree. Finding Mr. Hilton to be a "persistent-felony offender", the court exercised its discretion to impose an enhanced sentence and sentenced him to an indeterminate prison term of fifteen years to life. Mr. Hilton is currently serving that sentence.

    In his petition, Mr. Hilton argues that the sentencing court violated his constitutional right to a jury trial by imposing an enhanced sentence pursuant to New York's persistent-felony-offender statute.

Petitioner's constitutional claim grows out of the line of Supreme Court cases that began with Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490.

New York's persistent-felony-offender sentencing scheme gives the sentencing judge the discretion to sentence a "persistent-felony offender", as defined in New York Penal Law section 70.10(1), to an enhanced term of imprisonment, but states that such a sentence "may not be imposed" unless the court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest." N.Y. Crim. Proc. Law § 400.20(1); see also N.Y. Penal Law § 70.10(2). The outcome of Mr. Hilton's petition turns largely on the meaning of this provision.

As we discuss below, the New York Court of Appeals held in People v. Rivera, 5 N.Y.3d 61, 800 N.Y.S.2d 51 (2005), that under New York law a sentencing judge has the power to impose an enhanced

2

sentence based solely on a persistent-felony offender's prior convictions, and that an enhanced persistent-felony-offender sentence cannot be reversed as a matter of law for the sentencing judge's failure to make any other factual findings. Id. at 68, 800 N.Y.S.2d at 56. In light of that definitive reading of state law, we reject petitioner's argument that the decisions of the state courts denying his challenge to his sentence are either contrary to, or an unreasonable application of, Apprendi or its progeny.

In sum, we recommend that the writ be denied and Mr. Hilton's petition dismissed.

I.   NEW YORK'S PERSISTENT-FELONY-OFFENDER SENTENCING SCHEME

    A.   Statutory Framework

In New York, third-degree robbery, a class D felony,[1] is punishable by an indeterminate sentence of imprisonment. N.Y. Penal Law § 70.00(1). If the defendant has no qualifying prior felony convictions, the sentencing judge must impose a minimum term of between 1 and $2\frac{1}{3}$ years and a maximum term of between 3 and 7 years. N.Y. Penal Law §§ 70.00(1),(2)(d),(3)(b). Second-felony offenders convicted of third-degree robbery are subject to a mandatory

---

[1]   N.Y. Penal Law § 160.05.

sentencing enhancement; the judge must impose a minimum term of between 2 and 3½ years and a maximum term of between 4 and 7 years. N.Y. Penal Law §§ 70.06(3)(d),(4)(b).[2] In contrast, New York's persistent-felony-offender statute is discretionary, allowing a judge in defined circumstances to impose a class A-1 felony sentence (which carries a minimum sentence of 15 years to life) in lieu of the otherwise applicable sentencing range available for the offense. See N.Y. Penal Law § 70.10(2) (sentencing court "may" impose class A-1 felony sentence on persistent-felony offenders).

New York's persistent-felony-offender sentencing scheme comprises two provisions: Penal Law section 70.10 and Criminal Procedure Law section 400.20. People v. Quinones, 12 N.Y.3d 116, 125-26, 879 N.Y.S.2d 1, 7 (2009). Criminal Procedure Law section 400.20 lays out the procedure for determining whether to sentence a defendant as a persistent-felony offender. Id. at 126, 879 N.Y.S.2d at 8. Section 400.20 authorizes the court to order a hearing "to determine (a) whether the defendant is in fact a persistent felony offender, and (b) if so, whether a persistent felony offender sentence should be imposed," N.Y. Crim. Proc. Law

---

[2] New York law also applies a mandatory sentencing enhancement to "persistent violent felony offenders". See N.Y. Penal Law § 70.08(2) (sentencing court "must" impose enhanced sentence on persistent violent felony offenders).

4

§ 400.20(2), and it specifies that this hearing is to be held "without a jury." N.Y. Crim. Proc. Law § 400.20(9).

The key provision of section 400.20 states that an enhanced persistent-felony-offender sentence "may not be imposed unless, based upon evidence in the record of a hearing held pursuant to this section, the court (a) has found that the defendant is a persistent felony offender as defined in subdivision one of section 70.10 of the penal law,[3] and (b) is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest." N.Y. Crim. Proc. Law § 400.20(1). Put another way, in order to subject a defendant to an enhanced sentence, Section 400.20 specifies that, after finding that the defendant has been convicted of two or more qualifying prior felonies, N.Y. Crim. Proc. Law § 400.20(5), the court "must then make such findings of fact as it deems relevant to the

---

[3] New York defines a "persistent felony offender" as "a person, other than a persistent violent felony offender . . . who stands convicted of a felony after having previously been convicted of two or more felonies." N.Y. Penal Law § 70.10(1)(a). For a prior felony conviction to serve as the basis for an enhancement under section 70.10, it must have resulted in a term of imprisonment in excess of one year prior to the commission of the current felony. N.Y. Penal Law § 70.10(1)(b).

question of whether a persistent felony offender sentence is warranted." N.Y. Crim. Proc. Law § 400.20(9). Section 400.20 further states that "the burden of proof is upon the people," that "[m]atters pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct" (collectively, the "sentencing factors") "may be established by any relevant evidence, not legally privileged," and that "the standard of proof with respect to such matters shall be a preponderance of the evidence." N.Y. Crim. Proc. Law § 400.20(5). Although at any time the court "may, in its discretion, terminate the hearing without making any finding", section 400.20 provides that "[i]n such case, unless the court recommences the proceedings and makes the necessary findings, the defendant may not be sentenced as a persistent felony offender." N.Y. Crim. Proc. Law § 400.20(10).

### B.   The New York Court of Appeals' Construction of the Statutory Framework

There is no doubt that we are bound by the highest state court's interpretation of state statutes. E.g., Riley v. Kennedy, 128 S. Ct. 1970, 1985 (2008); Johnson v. Fankell, 520 U.S. 911, 916 (1997); Rubin v. Garvin, 544 F.3d 461, 468 n.11 (2d Cir. 2008) (internal citations omitted). Our assessment of Mr. Hilton's claim turns principally on the New York Court of Appeals' reading of the statute in three key decisions addressing its constitutional

validity in light of Apprendi and its progeny.

The New York Court of Appeals first upheld the constitutionality of New York's persistent-felony-offender statute in the wake of Apprendi in <u>People v. Rosen</u>, 96 N.Y.2d 329, 335, 728 N.Y.S.2d 407, 410 (2001). The statute's challengers read it as requiring the sentencing judge to make factual findings of two kinds prior to the imposition of an enhanced persistent-felony-offender sentence: findings demonstrating that the defendant had the requisite prior felony convictions, and factual findings about the specified sentencing factors sufficient to support the conclusion that an enhanced sentence was warranted in the public interest.

In Rosen, the court acknowledged that the statute required a sentencing judge to consider certain factors and express her opinion as to whether enhanced sentencing would be in the public interest, but it distinguished this requirement from the kind of fact-finding that implicated Apprendi:

> Under New York law, to be sentenced as a persistent felony offender, the court must first conclude that defendant had previously been convicted of two or more felonies for which a sentence of over one year was imposed. Only after it has been established that defendant is a twice prior convicted felon may the sentencing court, based on the

7

preponderance of the evidence, review
"[m]atters pertaining to the defendant's
history and character and the nature and
circumstances of his criminal conduct [...]
established by any relevant evidence, not
legally privileged" to determine whether
actually to issue an enhanced sentence. It is
clear from the foregoing statutory framework
that the prior felony convictions are the sole
determin[ant] of whether a defendant is
subject to enhanced sentencing as a persistent
felony offender. Then, the court must consider
other enumerated factors to determine whether
it 'is of the opinion that a persistent felony
offender sentence is warranted. As to the
latter, the sentencing court is thus only
fulfilling its traditional role -- giving due
consideration to agreed-upon factors -- in
determining an appropriate sentence within the
permissible range [....].

Id. at 334-35, 728 N.Y.S.2d at 410 (internal citations omitted).


    Subsequently, the New York Court of Appeals reaffirmed and

clarified Rosen in Rivera, 5 N.Y.3d at 66-68, 800 N.Y.S.2d at 54-

56. The court acknowledged that the statutory framework could be

interpreted as requiring the court to find additional facts about

the defendant other than the fact of prior convictions before

imposing a persistent-felony-offender sentence, but said that in

Rosen it had declined to read the statute in this manner. Id. at

67, 800 N.Y.S.2d at 55. The court explained that when it had said

in Rosen that prior convictions were the sole determinant of

eligibility for persistent-felony-offender status, it had not meant

8

simply that the other required determinations did not constitute "fact-finding" within the meaning of <u>Apprendi</u>; rather, it had meant that there were no other substantive requirements before a sentencing judge could impose an enhanced sentence: "To reiterate our analysis in <u>Rosen</u>, [...] once a defendant is adjudged a persistent felony offender, a recidivism sentence cannot be held erroneous as a matter of law, unless the sentencing court acts arbitrarily or irrationally". <u>Id.</u> at 68, 800 N.Y.S.2d at 56.[4]

---

[4] This interpretation of the statutory framework caused two judges to dissent from <u>Rivera</u>. Chief Judge Kaye, who had joined the unanimous <u>Rosen</u> decision, opined that the <u>Rivera</u> majority had adopted a new interpretation of the statutory framework, which was, in her view, untenable:

> Under [Criminal Procedure Law section] 400.20, the court's conclusion must be based on fact[-]findings made after a hearing at which the People have the burden of proof by a preponderance of the evidence -- a statutory requirement the majority minimizes. Further, after determining that the defendant qualifies as a persistent felony offender on the basis of prior convictions, the court 'must then make such findings of fact as it deems relevant to the question of whether a persistent felony offender sentence is warranted' [...]. The majority nevertheless construes the statute as requiring 'no additional fact[-]finding beyond the fact of two prior felony convictions' [...]. I cannot agree with the Court that the Legislature's 'must' means 'need not.'

<u>Rivera</u>, 5 N.Y.3d at 74, 800 N.Y.S.2d at 60-61 (Kaye, C.J., dissenting) (emphasis in original). Judge Ciparick agreed with Chief Judge Kaye that the majority's description of the persistent-felony-offender scheme "is not consistent with the plain language of Penal Law § 70.10 and [Criminal Procedure Law

In short, under <u>Rosen</u> as clarified in <u>Rivera</u>, the defendant's eligibility for an enhanced sentence is determined solely by his prior criminal convictions. The other sentencing factors are to be considered by the sentencing judge solely in exercising her discretion -- under the rubric of assessing the dictates of the public interest -- to decide whether the defendant before her should receive such an enhanced sentence. They do not constrain the sentencing court's exercise of discretion as a matter of law. As the Rivera court explained, "Criminal Procedure Law [section] 400.20, by authorizing a hearing on facts related to the defendant's history and character, does not grant defendants a legal entitlement to have those facts receive controlling weight in influencing the court's opinion." Id. at 68, 800 N.Y.S.2d at 56.[5]

The Court of Appeals reaffirmed this reading of the statute last year in <u>Quinones</u>, 12 N.Y.3d at 128, 879 N.Y.S.2d at 8. In that decision it reiterated that "under New York's [persistent-felony-offender] scheme, a defendant is subject to an enhanced sentence

---

section] 400.20", adding, "nor does it comply with the mandates of recent United States Supreme Court holdings." <u>Id.</u> at 76, 800 N.Y.S.2d at 62 (Ciparick, J., dissenting).

[5] However, the Appellate Division does retain the power to reverse or modify sentences "in the interest of justice". Rivera, 5 N.Y.3d at 68-69, 800 N.Y.S.2d at 56 (citing N.Y. Crim. Proc. Law § 470.20(6)).

based solely on the existence of two prior felony convictions." Id. at 128, 879 N.Y.S.2d at 8.


II.   FACTS AND PROCEDURAL HISTORY

          A.   Conviction for Robbery in the Third Degree


In 2002, Mr. Hilton stood trial before Justice Joan Sudolnik and a New York County jury for a purse-snatching that allegedly occurred in a parking lot near Columbia University on August 20, 2001. (Habeas Pet. ¶ 12). On January 9, 2002, the jury found Mr. Hilton not guilty of first-degree robbery, but guilty of the lesser-included charge of third-degree robbery, in violation of New York Penal Law section 160.05. (Trial Tr. at 482).


          B.   Sentencing


On January 23, 2002, the District Attorney moved for a hearing to determine whether Mr. Hilton should be sentenced as a persistent-felony offender. (Not. Mot., Jan. 23, 2002 , Pet'r Ex. F/Resp't Ex. A). The trial court granted the motion and held a hearing on March 8, 2002. (Tr., Mar. 8, 2002). At that hearing, Mr. Hilton admitted that he had previously been convicted of numerous felonies, including attempted murder, rape, and burglary. (Tr.,

Mar. 8, 2002, at 2-4). Based on these admissions and the prosecution's documentation of the length of time he had been incarcerated for these felonies, Justice Sudolnik found Mr. Hilton to be a "persistent felony offender". (Id. at 5). She noted that based on this designation, it was within her discretion to sentence him to the prison term prescribed for a class D felony or to an enhanced sentence, which could result in a life sentence.[6] She scheduled sentencing for April 12, 2002, and invited Mr. Hilton and his attorney to submit whatever they wished the court to consider in exercising its discretion. (Id. at 7-8).

Defense counsel submitted a 17-page pre-sentence memorandum based on interviews with Mr. Hilton, his relatives, a former case worker, and a social worker, supplemented with 32 pages of psychiatric and medical documentation, in an effort to mitigate what he conceded was a thirty-year history of involvement in the criminal justice system. (See Def.'s Pre-Sentence Mem., Mar. 29, 2002, Pet'r Ex. F, at 2, 15). The memorandum described Mr. Hilton's childhood physical and sexual abuse (id. at 3, 11), psychiatric hospitalizations at ages 7, 9, and 10 and ongoing mental health problems (id. at 3, 7, 8, 13), manipulation during Mr. Hilton's

---

[6] Tr., Mar. 8, 2002, at 5 ("I can sentence him as having been convicted of [a class] D felony, or I can sentence him under the other provisions of the law which permit life.")

12

teenage years by a cult that espoused hatred of the United States and advocated taking property from white people by force (id. at 4, 8, 11), chronic drug abuse that went largely untreated (id. at 4, 9), and his infection with HIV and later development of full-blown AIDS. (Id. at 3, 9, 13).

At the second hearing, the prosecutor surmised that Mr. Hilton would have employed force against the complainant if she had resisted, emphasizing the facts of Mr. Hilton's various crimes. (Tr., Apr. 12, 2002, at 3-5). He warned the court that if Mr. Hilton did not receive a life sentence, he likely would resume his pattern of robbing older white women after he was released. (Id. at 5-6). He urged the court to sentence Mr. Hilton to 15 years to life, the minimum enhanced sentence for a persistent-felony offender. (Id. at 6).

Defense counsel asked the court to consider the mitigating factors described in the pre-sentence memorandum (Tr., Apr. 12, 2002, at 8-13), emphasizing Mr. Hilton's remorse and newly-available support network (id. at 9-12), as well as his plummeting T-cell count, and urging the court to give Mr. Hilton a chance to die at home. (Id. at 11, 13). He also observed that it was inherently unfair to sentence Mr. Hilton as if the jury had

returned a guilty verdict on the first-degree robbery charge (see id. at 8), and noted that even a sentence of 3½ to 7 years -- the minimum available sentence -- would likely result in Mr. Hilton's incarceration for more than a decade, given the 6 years he had remaining on parole from his prior convictions and the parole board's likely response to his record. (Tr., Apr. 12, 2002, at 13).

Mr. Hilton also personally addressed the court, expressing regret and shame at the pain that he had inflicted on others over the years. (Id. at 16-21). He spoke of how difficult it has been for him to overcome his self-esteem problems and to reintegrate into society. (Id.). He expressed hope, however, that if released, he finally would be able to act differently. (Id. at 21-23). Mr. Hilton's mother also testified briefly on his behalf. (Id. at 14-15).

Justice Sudolnik then "ma[d]e some findings of fact concerning Mr. Hilton's record", describing various crimes for which Mr. Hilton had been arrested, charged, and, in some cases, convicted. (Id. at 23-27). She added:

> I've also listened to Mr. Hilton. And I believe that he sincerely believes what he says. That he sincerely believes that after he's released from prison he can control himself and can lead a law abiding life. Unfortunately, Mr. Hilton's history does not

14

> support that belief. Too many years have
> passed, [too] many crimes have been committed,
> the last one was committed just three months
> after he was released from prison. For
> whatever reason it's either a fluke of nature
> or the defendant's unfortunate childhood, I
> just don't believe at this stage he's able to
> refrain from criminal conduct. As much as I
> feel sorry for someone or anyone who finds
> himself in Mr. Hilton's position, I have to
> consider the interests of society and the
> people who would become his next victims.
> Based on this record, [...] the interests of
> society [are] best served by extended
> incarceration and lifetime supervision.

(Id. at 27-28). Judge Sudolnik then sentenced Mr. Hilton to an

indeterminate term of 15 years to life. (Id. at 28).


### C.   Appeal and Collateral Challenges


In December 2003, Mr. Hilton filed a motion in the trial court

to vacate his sentence. (Not. Mot. to Vacate Sentence, Dec. 5,

2003, Petr.'s Ex. A). He argued that his sentencing under New

York's discretionary persistent-felony-offender statute was

unconstitutional under Apprendi and Ring v. Arizona, 536 U.S. 584

(2002). (Mem. Law Supp. Mot. to Vacate, at 5-10). This claim was

based on his contention that the persistent-felony-offender

sentencing scheme "requires judges to make factual findings far

beyond a defendant's prior convictions" by mandating that the

sentencing court determine "as a matter of fact" that the

defendant's history, character, and criminal conduct warrant enhanced incarceration. (Id. at 5, 7-8).

On January 8, 2004, Justice Sudolnik denied the motion in a brief opinion, stating:

> the only factors I considered in deciding which sentence to impose were the facts underlying defendant's 2002 robbery conviction (which had already been proved to the jury's satisfaction beyond a reasonable doubt) and defendant's thirty-year history of convictions, incarcerations and failed attempts at rehabilitation, all of which are a matter of public record and with respect to which there was no dispute.[7]

In June 2004, the Appellate Division granted leave to appeal Justice Sudolnik's denial of the motion to vacate and consolidated it with Mr. Hilton's direct appeal. (Certificate Granting Leave, June 8, 2004, Resp't Ex. D). On this appeal, Mr. Hilton reiterated his arguments under Apprendi and Ring, adding that the Supreme Court's 2004 decision in Blakely v. Washington, 542 U.S. 296 (2004), which had struck down a sentencing scheme assertedly

---

[7] Order and Decision, Jan. 8, 2004, Pet'r Ex. A/Resp't Ex. B, at 2 [hereinafter "Sup. Ct. § 440.20 Decision"] (citing Rosen, 96 N.Y.2d 329, 728 N.Y.S.2d 407; Almendarez-Torres v. United States, 523 U.S. 224 (1998); People v. Phillips, 2 A.D.3d 278, 768 N.Y.S.2d 812 (1st Dep't 2003) (denying motion to vacate sentence "because the particular facts upon which the sentencing court based its determination were all permissible under Apprendi, in that they constituted facts found by the jury in the instant case, prior convictions and undisputed matters of record").

similar to New York's persistent-felony-offender statute, only further bolstered his constitutional challenge. (Def.-Appellant's Br., June 28, 2004, Pet'r Ex. C/Resp't Ex. E, at 29-47). He noted that no jury had ever heard evidence about his background, history, and character, such as the facts about his childhood that were discussed in the pre-sentence memorandum and at the sentencing hearing, or any evidence that went to his "failed attempts at rehabilitation" or his future dangerousness. (<u>Id.</u> at 44). He added that these were not matters of public record, as Justice Sudolnik had suggested in her decision denying his motion to vacate, and that at any rate "matters of record" fell outside of <u>Apprendi</u>'s narrow exception for judicial fact-finding as to prior convictions. (<u>Id.</u>).[8]

In a supplemental brief to the Appellate Division, Mr. Hilton argued in the alternative that his sentence should be reduced "in the interest of justice" to a prison term within the normal sentencing range for a class D non-violent felony. (Def.-Appellant's Supplemental Br., Oct. 3, 2005, Pet'r Ex. C/Resp't Ex. I at 16-19).[9] This brief set forth the "almost unimaginable

---

[8] He also argued on appeal that the evidence at trial was legally insufficient to sustain the jury's verdict. (<u>Id.</u> at 13-29).

[9] Shortly after the initial round of briefing to the Appellate Division in this case, the New York Court of Appeals granted

17

hardships" that Mr. Hilton had suffered since childhood (id. at 16), and his acceptance of responsibility and remorse. (Id. at 16-37). The prosecutor opposed this request, arguing that Mr. Hilton deserved to be sentenced as a persistent-felony offender, and noting that Justice Sudolnik had sentenced him to the minimum sentence within the enhanced range. (Appellee's Supplemental Br., Nov. 2005, Pet'r Ex. C/Resp't Ex. J, at 1-2).

On January 31, 2006, the Appellate Division affirmed Mr. Hilton's conviction and sentence. It rejected his <u>Apprendi</u> argument on the merits in light of the Court of Appeals' decision in <u>Rivera</u>. <u>Hilton</u>, 25 A.D.3d at 506, 810 N.Y.S.2d at 21.[10] Further, the court declined to modify his sentence in the interest of justice, expressing its agreement with Justice Sudolnik's exercise of discretion:

> As reflected in the sentencing minutes, the court carefully considered the presentence memorandum and statements on the record in

---

leave to appeal the Appellate Division's decision in Rivera, upholding the persistent-felony-offender statutory scheme under <u>Apprendi</u>, <u>Ring</u>, and <u>Blakely</u>. At the request of counsel, the Appellate Division reserved decision on Mr. Hilton's appeal pending the Court of Appeals' decision in <u>Rivera</u>, and gave both sides the opportunity to submit additional briefing after <u>Rivera</u> was decided. <u>People v. Hilton</u>, 25 A.D.3d 505, 505-06, 810 N.Y.S.2d 19, 20-21 (1st Dep't 2006).

[10] It also rejected on the merits Mr. Hilton's challenge to the legal sufficiency of the evidence against him at trial. <u>Id.</u>

> defendant's behalf, including his troubled
> childhood, his drug addiction and his present
> affliction with AIDS. Nevertheless, the court
> felt, and we agree, that in view of
> defendant's very lengthy and serious criminal
> record [...] the interests of society are best
> served by extended incarceration and lifetime
> supervision.

Id.


The New York Court of Appeals denied leave to appeal, and the

United States Supreme Court denied certiorari.  People v. Hilton,

6 N.Y.3d 895, 817 N.Y.S.2d 630 (2006), cert. denied, 549 U.S. 958

(2006).


Mr. Hilton filed a petition for habeas corpus relief in this

Court on October 4, 2007.


III. HABEAS STANDARD OF REVIEW


The scope of federal court review under the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA") turns on whether the

state courts have passed on the merits of the constitutional claims

presented in the habeas petition. In a case such as this, in which

the highest state court that considered the petitioner's claim

rejected it on the merits, the petitioner may obtain relief from

19

the habeas court only if the state court's ruling:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See, e.g., Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Brown v. Artuz, 283 F.3d 492, 497-98 (2d Cir. 2002).

"Clearly established" federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.[11] A decision is "contrary to" clearly established federal law

---

[11] Here, the relevant state-court decision is the decision of the highest state court to affirm the petitioner's sentence. See, e.g., Brown v. Greiner ("Brown I"), 409 F.3d 523, 526 (2d Cir. 2005); Brown v. Miller ("Brown II"), 451 F.3d 54, 59 n.3 (2d Cir. 2006). However, the Supreme Court has alternatively suggested that the federal habeas court should look to clearly established law at the time when the petitioner's conviction became final. Brown I, 409 F.3d at 533 n.3; compare Williams, 529 U.S. at 390 (Stevens, J.) ("The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final") with id. at 412 (O'Connor, J.) (referring to "decisions as of the time of the relevant state-court decision"). At any rate, the distinction is immaterial here. The Appellate Division denied Mr. Hilton's motion to vacate his sentence on January 31, 2006, and petitioner's conviction became final when the Supreme Court

"if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Id. at 412-13.

An "unreasonable application" of clearly established law occurs when the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "An incorrect ruling is not always an unreasonable one." Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006) (citing Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003)). For a decision to be unreasonable, "some increment of incorrectness beyond error is required." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999)). However, "the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Id.

In reviewing the facts of a habeas petitioner's case, AEDPA

---

denied certiorari on October 10, 2006. <u>Blakely</u> was decided on March 23, 2004, and <u>United States v. Booker</u>, 543 U.S. 225 (2005) was decided on January 12, 2005. Thus, whichever of those dates is relevant, the body of clearly established federal law includes the Apprendi line of cases through Booker.

requires that the federal court accord a presumption of correctness to the state court's factual findings. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting that presumption by clear and convincing evidence. Id.

IV.   APPRENDI AND ITS PROGENY

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant in state court the right to a jury trial[12] and the right to be free of punishment for a crime unless the prosecution proves the defendant's guilt of each element of that crime beyond a reasonable doubt.[13] In Apprendi, the Supreme Court considered whether these constitutional guarantees were violated by a New Jersey hate-crime sentencing statute that authorized the judge to impose an enhanced sentence if -- and only if -- the judge found by a preponderance of the evidence at a special evidentiary hearing held without a jury that the defendant had committed the crime with the intent to intimidate "because of race, color,

[12] See U.S. Const. amend. VI, XIV; Duncan v. Louisiana, 391 U.S. 145, 149 (1968) (holding that Due Process Clause of Fourteenth Amendment requires states to provide criminal defendants the right to a trial by jury afforded to federal court defendants by the Sixth Amendment).

[13] See, e.g., United States v. Gaudin, 515 U.S. 506, 510 (1995); In re Winship, 397 U.S. 358, 364 (1970).

gender, handicap, religion, sexual orientation or ethnicity." Apprendi, 530 U.S. at 468-69 (internal citations omitted). Pursuant to this statute, the judge had sentenced Apprendi to 12 years on one count of second-degree possession of a firearm for an unlawful purpose -- an offense otherwise punishable by a maximum of 10 years' imprisonment -- and Apprendi challenged the enhancement as violative of the Due Process Clause. Id. at 468, 471.

The Supreme Court struck down the statute, holding that a state sentencing scheme violates the Constitution if it "removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." Id. at 482-83 (emphasis in original). Thus, the Court concluded, "[o]ther than the fact of a prior conviction,[14]

---

[14] The Court had earlier upheld the constitutionality of judicial fact-finding as to a defendant's prior convictions in Almendarez-Torres v. United States, 526 U.S. 227 (1999). In that case, the defendant's sentence had been enhanced based on his admission that he had previously been convicted three times for aggravated felonies. Id. at 227. The Supreme Court held that, because the defendant did not dispute these convictions and because they had been entered pursuant to proceedings that comported with the Constitution's procedural safeguards, the defendant's sentence enhancement for recidivism did not implicate the right to a jury trial or the standard of proof that would apply to a contested issue of fact. Apprendi, 530 U.S. at 488 (discussing Almendarez-Torres).

any fact that increases the penalty for a crime beyond the
prescribed statutory maximum must be submitted to a jury, and
proved beyond a reasonable doubt." Id. at 490.

_____The Court next applied this principle in Ring v. Arizona, 536
U.S. 584, 609 (2002). In that case it struck down an Arizona
statute that authorized the sentencing judge to impose the death
penalty only if the judge, sitting alone, determined that the
defendant's case presented at least one of the statutorily
enumerated "aggravating circumstances" and that there were "no
mitigating circumstances sufficiently substantial to call for
leniency." Ring, 536 U.S. at 588-89, 592-93.

Of central importance to Mr. Hilton's argument in this case is
the Supreme Court's application of Apprendi and Ring in Blakely.
The Washington statutory sentencing scheme at issue in Blakely
allowed the judge to depart from a standard sentencing range if she
found "substantial and compelling reasons justifying an exceptional
sentence" but required that the judge base an exceptional sentence
on "factors other than those which are used in computing the
standard range sentence for the offense." 542 U.S. at 299 (internal
citations omitted). The state argued that the statute did not run

afoul of Apprendi because the grounds for departure enumerated in the statute were "illustrative rather than exhaustive" and the sentencing judge thus had broad discretion to identify the factors that she thought were relevant to whether an exceptional sentence was justified. Id. at 305. The Supreme Court rejected this distinction as "immaterial," observing that the appeals court would have reversed if the sentencing judge had imposed the sentence solely on the basis of the facts in the plea agreement, and concluding that "[w]hether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several specified facts (as in Ring), or any aggravating fact (as here), it remains the case that the jury's verdict does not authorize the sentence." Id. at 304-05 (emphasis in original).[15] The Court emphasized that it did not matter that

---

[15] In a decision postdating the conclusion of Mr. Hilton's appeals, the Supreme Court reiterated in Cunningham v. California, 549 U.S. 270 (2007) that a state statute that requires judicial fact-finding can violate the Sixth Amendment even if it does not identify particular factors that the judge must find and instead grants the sentencing judge broad discretion to determine which facts are relevant. Id. at 289-90. Invoking Blakely, the Court in Cunningham struck down a California statute that allowed a sentencing judge to impose an "upper term" sentence only if the judge found an "aggravating circumstance," which the California Supreme Court had ruled was "a determination that invariably requires numerous factual findings." See id. at 280, 288. Although the state rules guiding the sentencing judge's discretion provided only a nonexhaustive list of aggravating circumstances, they precluded a judge from imposing an upper term sentence based solely on facts that

"the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure. He cannot make that judgment without finding some facts to support it beyond the bare elements of the offense. Whether the judicially determined facts <u>require</u> a sentence enhancement or merely <u>allow</u> it, the verdict alone does not authorize the sentence." <u>Id.</u> at 305 n.8 (emphasis in original). The Court distinguished Washington's unconstitutional sentencing scheme from an "indeterminate-sentencing regime" in which a judge "may implicitly rule on those facts he deems important to the exercise of his sentencing discretion" but is not required to make factual findings beyond the record.[16]

The Court applied <u>Blakely</u> in <u>Booker</u> to strike down the binding

---

constituted any element of the crime. <u>Id.</u> at 278-79. Because <u>Cunningham</u> was decided after the Appellate Division's decision in this case, we cite it only to help explain the holding of <u>Blakely</u>. <u>See</u> Portalatin v. Graham, 478 F. Supp. 2d 385, 397 n.10 (E.D.N.Y. 2007) (Gleeson, J.); West v. Breslin, 2008 WL 110947, at *8 (S.D.N.Y. 2008) (considering Cunningham for purpose of determining whether Blakely or Booker changed the key principles established in Apprendi even though Cunningham was decided before relevant state court decision).

[16] <u>Id.</u> at 309; <u>see also</u> <u>id.</u> at 305 (distinguishing indeterminate sentencing statute upheld in <u>Williams v. New York</u> in which "[t]he judge could have 'sentenced [the defendant] to death giving no reason at all.'" (quoting <u>Williams v. New York</u>, 337 U.S. 241, 252 (1949))).

provisions of the Federal Sentencing Guidelines that limited the severity of the sentence that a judge could impose based on the facts found by the jury while allowing the judge to impose a higher sentence based on additional facts found by the judge by a preponderance of the evidence. Booker, 543 U.S. at 226, 233. The Court reiterated its statement from Blakely that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 232 (quoting Blakely, 542 U.S. at 303). It noted, however, that

> [i]f the Guidelines as currently written could
> be read as merely advisory provisions that
> recommended, rather than required, the
> selection of particular sentences in response
> to differing sets of facts, their use would
> not implicate the Sixth Amendment. We have
> never doubted the authority of a judge to
> exercise broad discretion in imposing a
> sentence within a statutory range. [...]
> [W]hen a trial judge exercises his discretion
> to select a specific sentence within a defined
> range, the defendant has no right to a jury
> determination of the facts that the judge
> deems relevant.

Id. at 750 (citing Apprendi, 530 U.S. at 481; Williams, 337 U.S. at 246).

V.    THE MERITS OF MR. HILTON'S HABEAS PETITION

Petitioner contends that the Appellate Division's rejection of his Apprendi challenge is either contrary to, or an unreasonable application of, the Supreme Court's decision in Blakely. (E.g., Mem. Law Supp. Habeas Pet. at 8-9). This argument rests on his reading of New York's persistent-felony-offender sentencing scheme as requiring fact-finding about the enumerated sentencing factors before the judge is authorized to impose an enhanced sentence. (See Mem. Law Supp. Habeas Pet. at 13-15).

For reasons that follow, we conclude that petitioner's interpretation of New York's persistent-felony-offender statute is inconsistent with the binding interpretation of the New York Court of Appeals. Given the Court of Appeals' reading of the statute in Rivera, we further conclude that the Appellate Division's rejection of petitioner's Apprendi claim was a reasonable application of Apprendi and subsequent Supreme Court decisions.

A.    Petitioner's Reading of the Statute Is Inconsistent with Binding Precedent of the New York Court of Appeals.

Petitioner claims that even after Rivera, the persistent-

28

felony-offender scheme requires a sentencing judge to base its decision as to what sentence to impose upon a persistent-felony offender on facts proved to the judge by a preponderance of the evidence, other than prior convictions or facts admitted in a guilty plea or found by the jury. (See, e.g., Mem. Law Supp. Habeas Pet. at 8, 13-14, 18-19). In other words, petitioner reads the statutory framework as authorizing enhancement only if the sentencing judge determines both that defendant has the requisite prior felony convictions and that enhanced sentencing is in the best interests of society based on judicially-found facts related to the sentencing factors. (Id. at 32-34).

In support of this position, petitioner notes that the Rivera court left the entire statutory framework intact, despite the statutory language that, as the Rivera dissenters argued, seems plainly inconsistent with the majority's insistence that prior convictions are the sole determinant of eligibility for enhanced persistent-felony-offender sentencing.[17] Petitioner notes, for example, that the statute establishes a standard of proof and

_____

[17] Id. at 18-20; Reply Mem. Law Supp. Habeas Pet. at 8; see, e.g., Crim. Proc. Law § 400.20(9) (after finding prior convictions, sentencing court "must then make such findings of fact as it deems relevant to the question of whether a persistent felony offender sentence is warranted").

allocates the burden.[18]

Petitioner also points to the court's statement in Rivera that if "a defendant had an especially long and disturbing history of criminal convictions, a persistent felony offender sentence might well be within the trial justice's discretion even with no further factual findings." Id., at 70-71, 800 N.Y.S.2d at 58. Mr. Hilton reads this language to imply that it would be an abuse of discretion for a sentencing judge to impose an enhanced persistent-felony-offender sentence without at least finding a "long and disturbing" criminal past, which petitioner asserts is a factual finding that falls outside of the narrow exemption in Apprendi for findings as to the fact of prior convictions. (Mem. Law Supp. Habeas Pet. at 23-24).

Petitioner argues that, rather than construing the persistent-

---

[18] Mem. Law Supp. Habeas Pet. at 15 (quoting N.Y. Crim. Proc. Law § 400.20(5) ("standard of proof" for matters pertaining to sentencing factors "shall be a preponderance of the evidence")); id. at 20 ("The burden remains with the prosecutor" (quoting Portalatin, 478 F. Supp. 2d at 403)); see also id. at 19 n.7 (citing Chief Judge Kaye's discussion in her Rivera dissent of plain language of the statute, which noted preponderance standard and burden on People); Rivera, 5 N.Y.3d at 68, 800 N.Y.S.2d at 56 ("the People retain the burden to show that the defendant deserves the higher sentence"); N.Y. Crim. Proc. Law § 400.20(5) ("burden of proof is upon the people").

felony-offender statute in a new way, the Rivera court merely
attempted to distinguish the requirements of the persistent-felony-
offender statute from judicial fact-finding within the meaning of
Apprendi. (Id. at 18-24). According to petitioner, these "flawed
attempts" to "salvage" the unconstitutional scheme[19] by minimizing
the importance of the required fact-finding about the specified
sentencing factors does not represent a construction of a state
statute to which we must defer. (Id. at 25-26 (citing Wisconsin v.
Mitchell, 508 U.S. 476, 483-84 (1993); Portalatin, 478 F. Supp. 2d
at 405-06); Reply Mem. Law Supp. Habeas Pet. at 8-10).

We note that some district judges in the Second Circuit --
albeit a minority -- share petitioner's interpretation of New
York's persistent-felony-offender scheme. See Washington v. Poole,
507 F. Supp. 2d 342, 360 (S.D.N.Y. 2007) (Koeltl, J.) ("It is
clear, even after the Rivera decision, that before a persistent
felony sentence is imposed, the sentencing court must find two
things."); Portalatin, 478 F. Supp. 2d at 405 (Gleeson, J.)
("Although Rivera casts those fact[-]findings as essential to
appellate review, rather than to initial imposition of sentence, it
nevertheless leaves them as a 'mandatory' part of the statutory

---

[19] Id. at 19, Reply Mem. Supp. Habeas Pet. at 3.

scheme"); <u>Brown v. Greiner</u>, 258 F. Supp. 2d 68, 91-93 (E.D.N.Y. 2003) (Gleeson, J.), <u>rev'd</u>, 409 F.3d 523; Rosen v. Walsh, 2003 WL 24208700 (S.D.N.Y. 2003) (Hellerstein, J.), <u>rev'd</u>, 409 F.3d 523. Indeed, petitioner relies extensively on <u>Portalatin</u> and <u>Washington</u>, which interpreted the persistent-felony-offender statute in the same manner petitioner now urges even after <u>Rivera</u>.[20]

We respectfully disagree. The key takeaway from <u>Rosen</u> -- as the <u>Rivera</u> majority understood it, and which the <u>Rivera</u> majority affirmed with even stronger language -- was its statement that prior felony convictions are the "sole determin[ant]" of eligibility for enhanced sentencing as a persistent-felony offender.[21] It is clear that the holding of <u>Rivera</u> was that prior

---

[20] See Mem. Law Supp. Habeas Pet. at iv (table of authorities showing citations to Washington at pages 9, 13, 20-24, 29, 34 of petitioner's memorandum of law and references to Portalatin at passim).

[21] <u>See</u> Rivera, 5 N.Y.3d at 66, 800 N.Y.S.2d at 54 ("Most pertinently, we further held [in <u>Rosen</u>] that ... the prior felony convictions are the sole determinant of whether a defendant is subject to recidivist sentencing as a persistent felony offender."); <u>id.</u> at 67, 800 N.Y.S.2d at 55 ("Under our interpretation of the relevant statutes, defendants are eligible for persistent felony offender sentencing based solely on whether they had two prior felony convictions. Thus, as we said in <u>Rosen</u>, no further findings are required."); id. at 68, 800 N.Y.S.2d at 56 ("As we explained in <u>Rosen</u>, the predicate felonies are both necessary and sufficient conditions for imposition of the authorized sentence for recidivism; that is why we pointedly called the predicate felonies the 'sole' determinant.").

convictions are the only substantive legal requirement for imposing an enhanced persistent-felony-offender sentence; indeed, this was the primary source of disagreement between the Rivera majority and the two dissenting justices. The New York Court of Appeals' decision in Quinones, addressing the persistent-felony-offender scheme after Rivera, confirms this. See Quinones, 12 N.Y.3d at 128, 879 N.Y.S.2d at 8.

We think petitioner's erroneous interpretation of Rivera stems in large part from his failure to distinguish between a statutory requirement that a court consider certain factors and a requirement that the court base its decision on those factors.[22] Plainly, even after Rivera, a sentencing judge must comply with several procedural requirements before she may impose an enhanced persistent-felony-offender sentence, such as holding a hearing at which both sides may offer evidence bearing on the court's exercise of discretion,[23] and articulating the reasons for her decision to

---

[22] See, e.g., Mem. Law Supp. Habeas Pet. at 17 (citing Rosen court's statement that "the court must consider other enumerated factors" for proposition that Rosen court "recognized that an enhanced discretionary persistent felony offender sentence cannot be imposed without additional fact-finding").

[23] E.g., Rivera, 5 N.Y.3d at 68, 800 N.Y.S.2d at 56 ("a defendant adjudicated as a persistent felony offender has a statutory right to present evidence that might influence the court to exercise its discretion to hand down a sentence as if no recidivism

impose an enhanced sentence.[24] Rivera also leaves intact the requirement that a sentencing judge consider the sentencing factors specified in Penal Law section 70.10(2) and Criminal Procedure Law section 400.20(1)-- to the extent that facts bearing on these factors are proved to the court by a preponderance of the evidence -- before exercising her discretion to impose an enhanced sentence.[25]

However, there is an important distinction between a procedural requirement antecedent to a judge's exercise of discretion and a substantive constraint on how the judge may

---

finding existed").

[24] Id. ("The statutory language requiring the sentencing court to consider the specified factors and to articulate the reason for the chosen sentence grants defendants a right to an airing and an explanation, not a result."); id. at 69, 800 N.Y.S.2d at 57 (stating that "mandatory consideration and articulation of these factors" facilitates appellate review); id. (statutes "require a sentencing court ... to consider the specified factors and explain why that consideration led the court to impose a recidivist sentence").

[25] See Rivera, 5 N.Y.3d at 68-69, 800 N.Y.S.2d at 56-57; Rosen, 96 N.Y.2d at 335, 728 N.Y.S.2d at 410 ("the sentencing court is ... only fulfilling its traditional role -- giving due consideration to agreed-upon factors -- in determining an appropriate sentence within the permissible statutory range."); West, 2008 WL 110947, at *7 ("The challenge to the section 70.10 enhancement arises because the statute requires the sentencing court to consider more than prior convictions in deciding whether to impose the enhanced sentence.").

exercise her discretion.[26] In light of Rivera, the persistent-felony-offender statute must be read as imposing a requirement of the first kind rather than the second. These procedural requirements are not inconsistent with the Rivera court's holding that the statutory framework does not impose any substantive limitations on how the sentencing court may exercise its discretion (apart from the requirement of judicial fact-finding as to the defendant's prior convictions).[27] To the extent that the statutory

---

[26] In Booker, the Supreme Court itself underscored the important distinction between these. After striking down the mandatory provisions of the federal sentencing guidelines, the Booker Court left in place a requirement that sentencing courts consider the Guidelines range before exercising their discretion to select a sentence. 543 U.S. at 245 (Breyer, J.); see also Rita v. United States, 551 U.S. 338, 366 (2007) (noting that "Booker [...] allows -- indeed, requires -- district judges to consider all of the factors listed in § 3553(a)"). In subsequent cases, the Court made clear that while the Courts of Appeals could constitutionally reverse sentences if the sentencing judge failed to even consider the sentencing guidelines, it violated Apprendi for the appellate courts to accord a presumption of unreasonableness to any sentencing decision that diverged from the recommended guidelines sentence. See Gall v. United States, 552 U.S. 38, 47-53 (2007). The majority in Gall rejected Justice Alito's argument that the post-Booker requirement that a judge "consider" the guidelines meant that she must give the guidelines "at least some significant weight." Id. at 61 (Alito, J., dissenting); see also id. at 40-41 (Stevens, J.) (reversing as unconstitutional the court of appeals' standard of review, which had required that a sentence that substantially varies from the Guidelines be justified by "extraordinary circumstances", and holding that appellate courts must review all sentences under a deferential abuse-of-discretion standard).

[27] Thus, petitioner's reliance on decisions of the Appellate Division that reversed persistent-felony-offender sentences for "failure to hold 'a valid hearing,'" and failure "to elaborate

language could be read otherwise, the Rivera court foreclosed that possibility: "The requirement that the sentencing justice reach an opinion as to the defendant's history and character is merely another way of saying that the court should exercise its discretion." Rivera, 5 N.Y.3d at 71, 800 N.Y.S.2d at 58.

Petitioner also errs by construing dictum in Rivera and Rosen to support his own theory of statutory interpretation while ignoring the central holding of those cases. For example, petitioner's memoranda of law imply that the statutory scheme's establishment of a preponderance standard of proof and placement of a "burden" on the state establish a formal legal burden of proof.[28] But Rivera made clear that a sentencing judge who considers mitigating evidence related to the sentencing factors but decides to impose an enhanced sentence based solely on the defendant's prior convictions may not be reversed as a matter of law for such a decision. The rest of the opinion must be read in light of this

upon those factors [the judge] considered" is misplaced. See Mem. Law Supp. Habeas Pet. at 16 (citing People v. Radcliffe, 185 A.D.2d 662, 663, 585 N.Y.S.2d 653, 653 (4th Dep't 1992); People v. Wilson, 64 A.D.2d 782, 783, 407 N.Y.S.2d 921, 921 (3d Dep't 1978)).

[28] See supra, n.18; Dir., Office of Workers' Comp. Progs. v. Greenwich Collieries, 512 U.S. 267, 269 (1994) (describing legal concept of "burden of persuasion" to mean that mean that, if the evidence is evenly balanced, then, as a matter of law, the party with the burden loses).

holding. Thus, it is inappropriate to assume that the Rivera court intended to invoke the legal concept of a burden of proof when the statement could also be understood to mean that the law recommends that sentencing judges err on the side of the defendant in exercising their discretion. Indeed, it is difficult to conceive how the prosecution could ever carry a burden of "proving" that someone "deserves" an enhanced sentence, an inherently subjective judgment not capable of being proved.

Petitioner also overemphasizes the Rivera court's suggestion that there was a distinction between requirements of fact-finding related to the underlying crime and the requirement under New York's persistent-felony-offender statute that the judge "consider holistically the defendant's entire circumstances and character". See Rivera, 5 N.Y.3d at 69 n.8, 800 N.Y.S.2d at 57 n.8. Petitioner characterizes this as one of the Rivera court's "flawed attempts" to uphold the constitutionality of the statute, then argues that this distinction is unavailing after Blakely. (Mem. Law Supp. Habeas Pet. at 22). However, the Rivera court explicitly noted that it did not rest its decision on that distinction. Rivera, 5 N.Y.3d at 69 n.8, 800 N.Y.S.2d at 57 n.8. Similarly, petitioner reads too much into the court's suggestion that a sentencing judge could base its decision to enhance a sentence solely on prior convictions in

the case of a defendant with "an especially long and disturbing history of criminal convictions". In light of the New York Court of Appeals' explicit statement in Rivera that prior convictions alone authorize an enhanced sentence -- which the court repeated in Quinones -- it is untenable to interpret this comment as implying that only in the case of a defendant with a long and disturbing history would a sentencing judge be justified in basing her decision solely on prior convictions.

Finally, we note that the Court of Appeals' interpretation of the statute in Rivera is consistent with what the state courts did in this case. Petitioner urges that the state court's actions in this case support his reading of the statute, emphasizing that Justice Sudolnik did, in fact, make findings of fact beyond prior convictions and ultimately based her decision to impose an enhanced sentence on many facts about defendant and his history.[29]

---

[29]  See Mem. Law Supp. Habeas Pet. at 34 ("In Mr. Hilton's case, the sentencing court did indeed base its opinion that he warranted an enhanced sentence on facts beyond prior convictions."); Reply Mem. Law Supp. Habeas Pet. at 11-16 (distinguishing exception carved out in Almendarez-Torres for prior judgments of conviction entered after a proceeding in which prosecutor was required to prove guilt beyond a reasonable doubt from New York's required judicial findings under a lesser standard of proof as to other aspects of criminal history); id. at 16 ("Respondent ignores all the facts that the sentencing court explicitly took into consideration during the discretionary persistent felony offender hearing.") (emphasis in original).

Concededly, Justice Sudolnik did explain her sentencing decision as being based on crimes for which Mr. Hilton was arrested and charged but not necessarily convicted and his "failed attempts at rehabilitation." (Sup. Ct. § 440.20 Decision at 2). However, nothing in the record indicates that she understood her discretion to be constrained by the specified sentencing factors. In fact, at the March 8 hearing, after finding Mr. Hilton to be a persistent-felony offender based on his prior convictions, Justice Sudolnik noted that it was within her discretion to impose an enhanced sentence based on that finding alone. (Tr. Mar. 8, 2002, at 5). She scheduled a subsequent hearing and invited both sides to submit any evidence that they thought might bear on her exercise of discretion. (Tr. Mar. 8, 2002, at 7-8). Notably, she did not limit the scope of relevant information to only information related to the specified sentencing factors.

The New York Court of Appeals' reading of the persistent-felony-offender statute is undoubtedly entitled to deference. Indeed, the Second Circuit made this plain in its two decisions addressing the Court of Appeals' analysis in Rosen. In both decisions, the circuit court started from the premise that the New York Court of Appeals, in describing the challenged statute, was interpreting it and that its reading of that legislation was

39

definitive. See Brown I, 409 F.3d at 534-35; Brown II, 451 F.3d at 57-58 (addressing Brown I). The court's decision in Rivera affirming and clarifying Rosen merits the same respect.

      B.   The Appellate Division's Affirmance of Petitioner's Persistent-Felony-Offender Sentence Is Not Contrary to, or an Unreasonable Application of, Blakely or Booker.

In affirming the denial of petitioner's section 440.10 motion, the Appellate Division relied squarely on the New York Court of Appeals decision in Rivera, including its holding that the persistent-felony-offender scheme is constitutional in light of not only Apprendi, but subsequent Supreme Court case law ending with the High Court's decisions in Blakely and Booker. Hilton, 25 A.D.3d at 506, 810 N.Y.S.2d at 20; see Rivera, 5 N.Y.3d at 63, 800 N.Y.S.2d at 52. Since the Appellate Division addressed the merits of Mr. Hilton's challenge, the question before us is whether the decision of the state court rejecting his claim is contrary to or an unreasonable application of the Apprendi line of cases through Booker. See, e.g., Brown I, 409 F.3d at 533 (explaining and applying standard of review under AEDPA).

The United States Supreme Court has not passed judgment on whether New York's persistent-felony-offender scheme (as construed

by the New York Court of Appeals in <u>Rosen</u> and <u>Rivera</u>) is either contrary to or an unreasonable application of any of the <u>Apprendi</u> line of decisions. Indeed, the Court has recently declined to consider whether it violates Blakely. See <u>People v. Quinones,</u> 12 N.Y.3d 116, 879 N.Y.S.2d 1 (2009), <u>cert.</u> <u>denied</u>, 130 S. Ct. 104 (2009).

The Second Circuit, however, has offered some guidance. Although it has not considered New York's persistent-felony-offender statute as construed in Rivera in light of either Booker or Blakely,[30] the Second Circuit has held that the Rosen decision was neither contrary to nor an unreasonable application of

_____

[30] The Brown I court explicitly noted that it was not considering whether Rosen comported with Blakely and Booker, since those decisions were issued after Brown's conviction had been finalized. 409 F.3d at 533-34. As in Brown I, the Brown II court noted that it was not addressing whether the Court of Appeals' validation of the persistent-felony-offender scheme would be reasonable in light of either Blakely or Booker, and also noted that it was not considering the Rivera decision. 451 F.3d at 58 & 59 n.3. Several district court habeas decisions that ruled on challenges to New York's persistent-felony-offender scheme under <u>Blakely</u> -- Washington, Portalatin, Morris v. Artus, 2007 WL 2200699 (S.D.N.Y. 2007), and Phillips v. Artus, 2006 WL 1867386 (S.D.N.Y. 2006) -- have been consolidated on appeal before the Second Circuit. <u>See</u> <u>Washington</u>, 507 F. Supp. 2d 342, <u>appeal</u> <u>docketed</u>, No. 07-3949 (2d Cir. Sept. 14, 2007); <u>Portalatin</u>, 478 F. Supp. 2d 385, <u>appeal</u> <u>docketed</u>, No. 07-1599 (2d Cir. Apr. 17, 2007). According to the docket, a three-judge panel heard argument on these cases on April 16, 2008 and the appeals are still pending.

<u>Apprendi</u>[31] or Ring.[32] In <u>Brown I</u>, the court observed that the first step of the analysis that sentencing judges must undertake under the persistent-felony-offender scheme "clearly falls within Apprendi's 'fact of a prior conviction' exception." 409 F.3d at 534. With respect to the second-prong requirement that the sentencing court make a "further determination that extended incarceration would best serve the public interest", id. at 531, the Court concluded that it was not unreasonable after <u>Apprendi</u> for the <u>Rosen</u> court to have distinguished this "vague, amorphous assessment" about what is in the public interest "in the court's 'opinion'" from judicial fact-finding within the meaning of <u>Apprendi</u> since the public interest determination "involves the sentencing court's fulfillment of 'its traditional role -- giving due consideration to agreed-upon factors -- in determining an appropriate sentence within the permissible statutory range.'" <u>Id.</u> at 531, 534 (quoting Rosen, 96 N.Y.2d at 335, 728 N.Y.S.2d at 410). In Brown II, the Second Circuit reasoned that Ring had not materially changed the meaning of Apprendi, and thus that Brown I was controlling.[33]

---

[31] Brown I, 409 F.3d at 534.

[32] <u>Brown II</u>, 451 F.3d at 55.

[33] <u>Brown II</u>, 451 F.3d at 59 ("We do not agree with [petitioner] that the fact that the statute at issue in Ring required judges to find one of several specified facts, rather than a single specified fact as did the statute at issue in Apprendi,

Petitioner argues that the result in this case should differ from the result reached in Brown I and Brown II because Blakely changed the Apprendi analysis. Specifically, petitioner contends that Blakely established that there is no constitutional significance to the distinction between a sentencing statute that requires a judge to find a specific fact as a prerequisite to imposing an enhanced sentence and one that requires that the judge make an "amorphous determination" that implicitly requires judicial fact-finding.[34]

However, New York's persistent-felony-offender scheme requires neither. We are bound by the New York Court of Appeals' determination that the sentencing judge, as a matter of New York law, could have sentenced Mr. Hilton as a persistent-felony offender after finding that he had been convicted of felonies the requisite number of times, without any further findings.

Blakely did nothing to cast doubt upon the constitutionality of a true indeterminate sentencing regime in which a judge has absolute discretion to choose among several available sentences and may choose to exercise her discretion based either on the record

---

materially distinguishes the two.").

[34] Mem. Law Supp. Habeas Pet. at 11-12, 22-23.

43

itself or on additional findings that she deems relevant. 542 U.S.
at 305, 309. Indeed, the Supreme Court has "never held that 'the
Sixth Amendment prohibits judges from ever finding any facts'
relevant to sentencing". Rita, 551 U.S. at 354 (internal citations
omitted). The Rivera court acknowledged as much, observing that
"the relevant question under the United States Constitution is not
whether those facts were essential to the trial court's opinion
[...], but whether there are any facts other than the predicate
convictions that must be found to make recidivist sentencing
possible. Our answer is no." Rivera, 5 N.Y.3d at 67-68, 800
N.Y.S.2d at 56; see also Blakely, 542 U.S. at 303-04; Booker, 543
U.S. at 232, 244.[35] Because under New York's persistent-felony-
offender statute as interpreted in Rivera, Justice Sudolnik was not
required to rely on any such facts before she could, as a matter of
law, impose an enhanced sentence, we agree with the other judges in
this circuit who have held that state courts applying that statute
did not unreasonably apply, or arrive at a decision contrary to,

---

[35] See also Quinones, 12 N.Y.3d at 129, 879 N.Y.S.2d at 9
("nothing in [the Sixth Amendment's] history suggests that it is
impermissible for judges to exercise discretion" (quoting
Apprendi, 530 U.S. at 481)); id. (noting that in indeterminate
sentencing schemes, judge "may implicitly rule on those facts he
deems important to the exercise of his sentencing discretion. But
the facts do not pertain to whether the defendant has a legal
right to a lesser sentence -- and that makes all the difference
insofar as judicial impingement upon the traditional role of the
jury is concerned." (quoting Blakely, 542 U.S. at 309)).

Blakely.[36]

Nor was the Appellate Division's rejection of Mr. Hilton's Apprendi claim contrary to or unreasonable in light of Booker, which was itself a direct application of Blakely. Under New York's persistent-felony-offender statute, as under the post-Booker federal sentencing scheme,[37] after considering the specified sentencing factors, a judge is ultimately free to base her decision on anything she considers relevant.[38] Indeed, the Rivera court

---

[36] See, e.g., Daniels v. Conway, 2009 WL 466804, at *10 (S.D.N.Y. 2009) (noting that "Blakely eliminated any distinctions among the kinds of facts that might give rise to a judge's authority to impose an enhanced sentence," and holding that New York's persistent-felony-offender scheme survives Blakely because the statutes, "as interpreted by the Court of Appeals, permit[] sentencing enhancement on the basis of two prior felony convictions alone"); West, 2008 WL 110947, at *8 ("I do not find a valid basis for concluding that Blakely or Booker altered the rules of the road on prohibited judicial fact-finding."); Bailey v. Rivera, 2007 WL 3120904, at *6 (S.D.N.Y. Oct. 24, 2007) ("The New York [c]ourt's conclusion [in Rivera] that the statute is consistent with Blakely and Booker was reasonable."); Morris v. Artus, 2007 WL 2200699, at *9 (S.D.N.Y. July 30, 2007) ("Regardless of whether the distinction established by the Second Circuit in Brown I and Brown II is found to withstand Blakely, the New York Court of Appeals' interpretation of the statute in Rivera takes the statute out of the zone of Sixth Amendment violation.").

[37] See Rita, 552 U.S. at 49 (noting that, since the federal sentencing guidelines are no longer mandatory, the range of relevant considerations is "significantly broadened" beyond the specified sentencing factors).

[38] N.Y. Crim. Proc. Law § 400.20(9) (at hearing, "either party may introduce evidence with respect to [...] any [...] matter relevant to the issue of whether or not the defendant should be

observed that:

> in this respect, our statutes are quite
> similar to the federal sentencing statute,
> which requires federal sentencing courts to
> consider various factors, including 'the
> history and characteristics' of the defendant.
> The Supreme Court recently upheld the
> statutory demand for sentencing courts to
> consider those factors, which do not require
> any jury fact[-]finding.

Rivera, 5 N.Y.3d at 68, 800 N.Y.S.2d at 56 (citing Booker, 543 U.S.

at 245-45).

As Judge Lynch observed in Bailey:

> [In] Blakely, the statute entitled the
> defendant to a particular sentence unless the
> sentencing court identified and specifically
> found concrete "circumstances in aggravation"
> additional to elements of the offense. Id. at
> 862. The New York Court of Appeals, which is
> of course the final authority on the meaning
> of its own state statutes, has explicitly
> interpreted § 70.10 as not requiring any such
> findings of additional aggravating
> circumstances. Rather, under New York law the
> "sole determinant" of eligibility for enhanced
> sentencing is the presence of prior felony
> convictions -- a fact that is not subject to
> the Sixth Amendment jury trial requirement.
> That interpretation is driven by the very
> language of the statute, which permits the
> imposition of an enhanced sentence whenever
> such a sentence "will best serve the public

---

sentenced as a persistent felony offender" and court "must then
make such findings of fact as it deems relevant to the question
of whether a persistent felony offender sentence is warranted.")
(emphasis added).

> interest." The critical distinction, in other words, is that the judge is authorized to impose a life sentence in her discretion, based on a general assessment of the public interest, and not based on a particularized finding either of a specific fact about the offense or the offender (besides the fact of a prior conviction) defined by the legislature or a sentencing commission, or one of several alternative possible defined aggravating facts, or even of any particular aggravating fact determined by the judge herself.

Bailey, 2007 WL 3120904, at *7 (footnotes omitted, emphasis in original).

In sum, we cannot say that the Appellate Division's decision upholding Mr. Hilton's persistent-felony-offender sentence was contrary to or an unreasonable application of Apprendi or its progeny.

<u>CONCLUSION</u>

For the reasons stated, we recommend that the writ be denied and that Mr. Hilton's petition be dismissed.

Because reasonable jurists not only may disagree, but have disagreed, about the merits of petitioner's sentencing claim, we recommend that the court issue a certificate of appealability with

47

respect to that issue. See 28 U.S.C. § 2253(c).

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. See also Fed. R. Civ. P. 6(a),(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable George B. Daniels, Room 630, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S. 1111 (1986).

**DATED:    New York, New York**
**February 24, 2010**

**RESPECTFULLY SUBMITTED,**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

48

Copies of the foregoing Report and Recommendation have been
mailed today to:

Alexis Agathocleous, Esq.
Richard M. Greenberg, Esq.
Office of the Appellate Defender
11 Park Place, Suite 1601
New York, NY 10007

Alyson J. Gill, Esq.
Assistant Attorney General for the State of New York
120 Broadway
New York, NY 10271